May it please the Court, my name is Jonathan Montag and I represent Mr. Ahmed Abdille and I request that I can reserve two minutes of time for rebuttal. If you do so, just watch the clock. You can see the clock on the right there. That's counting down for you. Yes, Your Honor. This case is about a Somali seeking asylum in the United States. And the case principally revolves around factual issues and whether the immigration judge made a proper determination that there wasn't reasonable evidence and substantial evidence that the man was persecuted. And there is one legal issue intertwined with that and that's the issue of whether he applied within one year of his admission to the United States. Now, we have a case pending. I'm not sure if you're aware of this. It's called Ramadan v. Gonzalez. Are you familiar with that? No, Your Honor. Apparently, this specific issue has been raised in a case which has already been argued and we're simply waiting for a decision. So it's conceivable. We want to hear your argument, but it's conceivable we may have to put off or defer submission with respect to that issue depending on whether we feel it's precisely the same issue. I see. Well, hopefully it is and it goes well. But this court has had three cases where they just won't object to any further delay in the proceedings, will it? Not no. All right. This this court has addressed this issue in three cases and Hakeem Molina Estrada and then Sagaidak v. Gonzalez, which is a newer case at 405 F. 1035. All those cases involve a clear clearly in the record that the person filed late and whether there was exceptional circumstances to excuse it. This case differs from those in as much as there's no clear external evidence other than the testimony of Mr. Abdiel as to when he entered the United States. The immigration judge concluded that he didn't find him credible and therefore said he didn't meet his burden on that issue. However, it's not clear to me from the record that he made the final finding that he was ineligible for asylum strictly on that basis because he went on after he noted that he didn't meet his burden and that there was a burden he had to meet to talk more about discretionary issues. So there's a wash over here between the discretionary issues and this one year issue. Now, if this court were to strictly decide that the immigration judge's finding on this issue, even though not completely articulated, means that this court is barred from jurisdiction to review that issue and therefore he's ineligible for asylum, that would mean that all the other jurisprudence about whether somebody is believable, whether the discrepancies are relevant, whether the discrepancies apply to the core of the issue, whether his explanations are probative, whether he was given a chance to discuss the discrepancies, all that gets washed away if we just decide that the immigration judge can say, I don't believe that he was here for the right amount of time. Now, what does the immigration judge have to decide? What specifically, what kind of findings would sustain a determination that he was too late? Well, it seems to me there are several different ways that a person can apply for asylum. One is he comes to the border either with false documents or just saying, I want asylum. And then we know when he hit the United States because he's met at the border by an officer. OK, well, we don't have that here. The other way would be somebody flies into an airport with a proper visa and then decides that he wants to ask for asylum. Then again, we have a clock start and we know. The fourth way is somebody comes into the United States somehow through stealth and then it's up to the alien to show that he came to the United States. And he's also up to the alien to show that he deserves asylum. I mean, he's here. The issue is when he came here. Exactly. Now, if he doesn't have evidence as to when he came here, because as in this case, the smuggler destroyed his documents and all that, then the same issues about his credibility that go to the validity of his asylum application also apply to when he came into the United States. So in the case when somebody enters by stealth, the immigration judge can just say, I have nothing on the record, the documents to me. Clearly and convincingly, when you came into the United States, therefore, you're ineligible for asylum. Case closed. Can't go to the Ninth Circuit. Can't go to the Court of Appeals because there's a bar and that's the end of it. And all your arguments about why you were persecuted, all your convincing. The way the statute is presently written, that seems to be what Congress intended, at least with respect to the one year time bar. And as Judge O'Scanlan was saying, if it's possible that under the Real ID Act, that Congress restored our jurisdiction to review that, make that kind of review, to review the time bar issues. But we don't, until we see what this Ramadan case says, it seems like you've got a tough argument that under the existing law, we could review that determination. My response would be that as long as all the jurisprudence still stands about determining credibility of somebody, then the wash over effect of saying, because we don't believe other things that you say, therefore, you're ineligible for asylum, shouldn't apply. And there is precedent for that in the court where this court found that an immigration judge improperly decided that someone was an alien smuggler, therefore, decided she didn't have good character. And that issue was non-reviewable, the issue of good character. However, this court said, and regrettably, I have to send you the site. This court said that because there was a false finding about the alien smuggling, there's a wash over, and therefore, this case needs to go back to the judge with an understanding that this court finds her credible on certain issues. And based on that finding of credibility, now you need to consider that finding in conjunction with your other findings that she lacks an element that this court is unable to review because of a jurisdictional bar by Congress. So I think that that kind of reasoning is instructive here. If this court finds that what the immigration judge did in saying you didn't have a story, a plan of action, and people can't get into the United States with fake documents, somehow you're here in the United States, but it doesn't make sense to me how you got here, and therefore, I don't believe anything about you. When the man is probably a Somali who came to the United States and is here and speaks Somali, then if those things are a problem, then this court certainly, it seems to me, should be able to send the case back to the immigration judge to say, the man is credible, and therefore, you redetermine your one finding that bars us because we find that he's a credible person. And I'd like to thank you. Reserved. You may do so, counsel. We'll hear from the government. May it please the court, my name is Jennifer Paisner on behalf of the respondent, Alberto Gonzalez. I assume that the case that you mentioned of Ramadan versus Gonzalez addresses the effect of the Real ID Act on a finding of a one-year time limit. Does it provide an exception for judicial review of legal issues, in which case does the one-year determination fit within that? At least that's our understanding of what's going on in that case. I take it the government's not aware of any more detail with respect to that? No, no, I'm personally not. Our position would be, whatever you decide in this case, that an adverse credibility determination is not a legal determination. And so even if the court were to determine that the Real ID Act restores its jurisdiction over legal and constitutional issues relating to the one-year time bar, that in this case, what the immigration judge did was make a factual adverse credibility determination, which the Real ID Act... That would affect the one-year issue. Excuse me? That would not affect the one-year issue. Well, the Real ID Act would not affect the fact... would not affect the fact that this court still doesn't have jurisdiction over the finding that he failed to file his asylum application within one year of his arrival in the United States, because that is still a factual adverse credibility determination over which the Real ID Act has no effect. All the Real ID Act does is restore jurisdiction over legal and constitutional claims. Whatever effect that has on the one-year time bar, which I assume this court will decide in Ramadan, here, the immigration judge's denial of asylum was based on a factual adverse credibility determination. Well, let me tell you what bothers me about the credibility issue as a whole. It's one thing to have some doubt about details of his travel, but how far does that extend? Does that affect everything else about his application? What happened in Somalia? What may or may not have been the date in which he actually arrived and then being able to compute a year to that? How far does that go? Does it poison the entire proceeding? Well, in this case, the immigration judge determined that it affected his entire credibility. What the immigration judge did, and I'd like to just briefly note that regardless of whether the court has jurisdiction over the asylum claim under its decision in Kaznikovic v. Gonzales at 400 F. 3812, it still has jurisdiction over the denial of withholding and torture convention protection because the adverse credibility determination went throughout. So, the court still has jurisdiction over the adverse credibility determination regardless of the one-year time bar in the Real ID Act. The immigration judge noted that, not that his testimony as to his claims of what happened to him in Somalia was credible, but that it was consistent. However, the immigration judge then looked at other crucial pieces of his claim to asylum. And an asylum claim includes flight from persecution or flight from alleged persecution and the date of alleged entry into the United States. And those, with respect to those two key pieces of his testimony, the immigration judge found not just one inconsistency, but numerous inconsistencies. So, there were inconsistencies as to when he left Somalia and went to Kenya, the intervening period from 1991 to 1999, there were significant inconsistencies as to where he spent those years. He put one thing in his asylum application. He told the asylum officer something else. He then testified as to yet a third story about where he spent that time. And so, that was one major basis of the adverse credibility determination. The immigration judge then also noted that there were significant discrepancies concerning how he eventually left Kenya and came to the United States. And he found completely incredible his version of somebody hiring the alien smuggler. He didn't know who it was. He didn't know any information about the passport under which he traveled. He couldn't remember the name he used. He couldn't remember whether there were visas in the passport. Details which the immigration judge reasonably concluded that somebody would know if he was undertaking this major journey. And that it was unbelievable that if events had really transpired as he said they did, that he wouldn't know this information. He, it's not just that he couldn't remember what airline he traveled on, but he told the asylum officer he traveled on one airline. And then he told the immigration judge during the hearing that he traveled on a different airline. He was then inconsistent as to what happened when he got to Mexico, how much time he spent in Mexico, where he stayed, how he got from Mexico City to Tijuana. And then the final piece of it was his entry into the United States, which again, the immigration judge found to be incredible. He said that he didn't. Those travel details like the passport, the visas, which airline he was on, does that have anything to do with what his status in Somalia would be? Well, it goes to, for asylum, it goes to. In other words, does it go to the heart of the asylum application? It does go to the heart of the asylum application in that part of the asylum application is arrival within one year. The, proving eligibility for asylum is not just proving past persecution or a well-founded fear of persecution. It's also showing that you timely filed your asylum application. All right, what do we do with the fact that this case was filed before the Real ID Act came into effect? Should, does he get punished retroactively somehow? Well, I believe our position would be that the, I mean, the Real ID Act, the provisions of it that would apply to this case have to do with this court's jurisdiction. And so, they, I mean, the Real ID Act now affects this court's jurisdiction, even though this case was filed beforehand. There are other provisions in the Real ID Act that have to do with, that have to do with other parts of credibility and what kinds of documents you have to provide, but those provisions aren't applicable here. So, the only part that would be immediately applicable is this court's jurisdiction. So, the discrepancies do go to a material part of his asylum application. And our argument is that because they go to a material part of his asylum application,  that he was an incredible witness as a whole, and therefore ineligible for all forms    we would have to go back over into the Withholding and Torture Convention areas. Because the adverse credibility determination has to do with his credibility as a whole. And so, the immigration judge reasonably concluded, based on these inconsistencies regarding his time in Kenya, his travel, his entrance into the United States, reasonably concluded that he was an incredible witness as a whole, and therefore ineligible for all forms of relief from removal. I gather by the same token, if we were to determine that the adverse credibility decision is not supported by substantial evidence, that would apply just to the Withholding and Torture Convention. That's right. Our position would still be that with respect, because the asylum claim, the court still reviews the adverse credibility determination, but because the asylum claim was denied based on a finding that it was untimely, over which this court doesn't have jurisdiction, that the court is just reviewing the Withholding and Torture Convention applications. If the court has nothing further. Nothing further. Thank you. Thank you. Mr. Montague, you have some reserve time. Yes, Your Honor. I'd like to just very briefly, some of the credibility findings that the judge made. Firstly, I think that if the court were to review the asylum officer's notes, and then the asylum officer's summary, and they're at 387, about, and 418 of the record, the court will find that the summary that the asylum officer used to, which the immigration judge used to rely on, shows major discrepancies from his own notes. For example, his notes say that different friends and relatives gave him money, and then in the summary, he writes that he got all the money for his traveling from his friend, Muhammad. And there's other examples of that, too. Another inconsistency was that the officer wrote in his notes that Mr. Abdili was told by his mother later on that she was raped, and there seems to be some inconsistency alleged with the testimony. But if the court were to look at the testimony at pages 118 and 158 of the record, they tried to get from him when his mother told him that she was raped, but the questions come out consistently as him saying that he learned later that she was raped, but at the time, she told him that men tried to rape her. And so they asked him, what did she tell you? And he said, they tried to rape me, and then your father went to protect me, and he was killed. So I think if you look at the temporalities in those sections, you'll see that the asylum officer shouldn't be found to be credible in the summary, and that's a major part of the findings of the judge about credibility. Thank you, counsel. The case just argued will be submitted for decision.
judges: Hall, O'scannlain, Paez